UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| MICHAEL H. WYATT ) | Case No. 08-14792-SSM |
| ) | Chapter 13 |
| Debtor ) | |

**MEMORANDUM OPINION**

A hearing was held on October 8, 2008, on the objection of Gerald M. O'Donnell, standing chapter 13 trustee, to confirmation of the plan filed by the debtor on September 10, 2008.[1] The primary issue was whether, in computing projected disposable income for an above-median income debtor, Veterans Administration disability pay could be excluded. Because the court concludes that it cannot, confirmation must be denied.

Background

Michael H. Wyatt (the debtor) filed a voluntary petition in this court on August 11, 2008, for adjustment of his debts under chapter 13 of the Bankruptcy Code. His schedules of current income and expenses (Schedules I and J) reflect monthly income of $9,237.50 net of withholdings, and monthly expenses of $6,877.00, for a monthly surplus of $2,360.50. Included in his income is $2,618.00 per month he receives in disability compensation from the "Veterans Administration."[2] On his Statement of Current Monthly Income and Calculation of Commitment

---

[1] Subsequent to the filing of the objection, trustee O'Donnell retired and Thomas P. Gorman has been appointed as standing chapter 13 trustee in his stead.

[2] The former Veterans Administration is now the Department of Veterans Affairs, but because the former name is in still in common use, and because the shorthand is so widespread,

Period and Disposable Income (Form B22C), he represents that his "current monthly income"—which is to say, his average monthly income for the six-month period preceding the bankruptcy filing—was $9,189.67 per month. This figure does not include the $2,618.00 per month in VA disability compensation  Even without the disability compensation, the debtor's income—$110,276 on an annual basis—substantially exceeds the state-wide median income for a household of the same size. The debtor has claimed a total of $8,343.48 in deductions under the so-called "means test," resulting in a calculated "monthly disposable income" of $846.19.[3]

      The debtor's plan, which was filed on September 9, 2008, requires the debtor to pay the trustee the sum of $1,375 per month for 60 months, for total payments into the plan of $82,500. From this the trustee would pay his own statutory commission of 10%, the fees of debtor's counsel in an amount to be determined, $6,224 on a secured automobile claim, and $17,969 in mortgage arrears on the debtor's home. The balance would be paid pro rata to unsecured creditors, with the estimated distribution being 22 cents on the dollar.

Discussion

      Upon objection by a creditor or party in interest, a chapter 13 plan that pays unsecured creditors less than 100 cents on the dollar cannot be confirmed unless the debtor's "projected disposable income" for the "applicable commitment period" is applied to the payment of unsecured claims. § 1325(b)(1), Bankruptcy Code. For a debtor whose "current monthly income" exceeds the state-wide median for a household of the same size, the applicable

---

it will be referred to in this opinion as the VA.

   [3] The trustee's objection questions two of the deductions (totaling $180 per month) based on insufficient documentation to support them. Because the disposable income test is not satisfied even if the deductions are permitted, the court need not address them at this time.

2

commitment period is 5 years, and projected disposable income is determined using the "means test" that was enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 for determining whether a chapter 7 filing would be presumed to be an abuse.  § 1325(b)(3) and (4), Bankruptcy Code; *see In re Parulan*, 387 B.R. 168, 170-71 (Bankr. E.D. Va. 2008).  The calculation of projected disposable income begins with current monthly income, which is defined as "the average monthly income *from all sources* that the debtor receives . . . without regard to whether such income is taxable income . . . but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . on account of their status as victims of such terrorism."  § 101(10A), Bankruptcy Code (emphasis added).

   The debtor has cited to no reported (or even unreported) decisions holding that VA disability compensation may be excluded from current monthly income, and the plain language of the statute is clearly to the contrary.  That is, the definition begins by unambiguously stating that current monthly income consists of income "from all sources" and then lists only three exceptions, none of which includes VA disability compensation.  The only cases the court has found that have addressed the issue have concluded that VA disability compensation is <u>not</u> excluded from current monthly income.  *In re Waters*, 384 B.R. 432, 437-38 (Bankr. N.D. W.Va. 2008) (holding, after an extensive review of the case law, that "exempt VA benefits are properly included in the calculation of a debtor's current monthly income . . . and therefore are to be included when calculating the extent to which the Debtor has disposable income to fund a Chapter 13 plan"); *In re Hedge*, — B.R. —, 2008 WL 4294281 at *2 (Bankr. S.D. Ind.,

September 17, 2008) (holding that "VA disability payments qualify as 'current monthly income'").

For that reason, the court determines that the debtor's current monthly income is $11,807.67 rather than $9,189.67 as reported on Form B22C. Even allowing all the claimed deductions under the means test, the debtor's monthly disposable income is $3,464.19 rather than $846.19. This amount, multiplied by 60 months, yields, $207,851.40, which is the amount that must be paid to unsecured creditors in order to satisfy the disposable income test unless allowed unsecured claims can be paid in full by a lesser amount.[4] The debtor's plan, however, pays only $50,057 to the unsecured creditors.[5] For that reason the plan must be denied confirmation.

A separate order will be entered denying confirmation, with leave to file a modified plan within 20 days.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

---

[4] The debtor's schedules list $111,764 in unsecured claims. Depending on the amount of timely claims that are actually filed, it may be possible to pay allowed unsecured claims in full without having to pay the full amount of the debtor's projected disposable income into the plan.

[5] The calculation of the amount available for unsecured claims is as follows:

| | |
|---|---|
| Payments into plan | $ 82,500.00 |
| less Trustee's commission | $ (8,250.00) |
| less payments on secured automobile | $ (6,224.00) |
| less mortgage arrears | $(17,969.00) |
| Available for unsecured claims | $ 50,057.00 |

Copies to:

Michael H. Wyatt
8221 Birch St.
Manassas, VA 20111
Debtor

Thomas O. Murphy, Esquire
8709 Plantation Lane
Manassas, VA  20110
Counsel for the debtor

Thomas P. Gorman, Esquire
211 N. Union St.
Alexandria, VA 22314
Chapter 13 trustee